

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-5-2008

# USA v. Patton

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4571

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Patton" (2008). *2008 Decisions.* Paper 563.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/563

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4571
_____

UNITED STATES OF AMERICA

v.

OMARI HOWARD PATTON,
a/k/a "O"


OMARI HOWARD PATTON,
Appellant

_____

No. 05-1751
_____

UNITED STATES OF AMERICA

v.

GARY LEE,
a/k/a GENERAL

GARY LEE,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 02-cr-00093-1 and 02-cr-00093-7)
District Judge:  Honorable Donetta W. Ambrose
_____

Before:  RENDELL, SMITH and FISHER, *Circuit Judges*.

(Filed: September 5, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Omari Howard Patton was convicted of (1) conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, (2) possession with intent to distribute 50 grams or more of cocaine base, (3) possession with intent to distribute 100 grams or more of heroin, and (4) using a communications facility to further a narcotics conspiracy.  Gary Lee was convicted of (1) conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, and (2) possession with intent to distribute five kilograms or more of cocaine.

Patton appeals his convictions, and Lee appeals both his convictions and his sentence.  For the reasons set forth below, we will affirm.

I.

Because we write exclusively for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts necessary to our analysis.

Patton and Lee were arrested in connection with a Drug Enforcement Agency (DEA) investigation of a drug conspiracy in the Pittsburgh area, involving multiple individuals from 1998 to April 2002, when the arrests were made. Oliver Beasley and Gary Lyles managed the drug conspiracy, which involved the purchase and redistribution of cocaine and heroin.

Lyles operated a stash house where he received drug shipments that he redistributed to various individuals involved in the conspiracy. Beasley would send individuals to retrieve portions of cocaine shipments from the stash house. Beasley testified that he regularly supplied Lee with portions of cocaine shipments, which he resold, and that Lee himself retrieved shipments from the stash house on several occasions. Beasley also testified that Lee would pay him for the cocaine by dropping off payments at the stash house or paying one of Beasley's associates. One such associate testified that he made several cocaine deliveries to Lee at his house. Another witness testified that Lee supplied him with cocaine for several months in 2001.

In early 2001, Lyles began receiving shipments of heroin from a dealer in New Jersey. The dealer testified that Patton had introduced him to Lyles in a pre-arranged

3

meeting at the stash house at which Patton was present. At the meeting Lyles and the dealer agreed upon a purchase price for the heroin, after which Lyles began purchasing and receiving heroin shipments in large quantities. The dealer also testified that Patton traveled to New Jersey more than once to retrieve heroin shipments and deliver them to Lyles. Lyles testified that he provided Patton with a Ford Explorer with a trapdoor that Patton used to transport heroin from New Jersey to Pittsburgh.

In March 2002, the Pennsylvania State Police arrested an individual who was transporting a large shipment of heroin from New Jersey to Lyles' stash house in Pittsburgh. In wiretap telephone recordings, Patton discussed the police seizure with Lyles and told him that he would locate another individual to deliver heroin from New Jersey. Lyles further testified that he traveled to New York City with Patton to meet with their heroin supplier, and evidence of these arrangements was recorded via electronic surveillance.

The federal investigators in this case learned of a heroin shipment due to be delivered to Pittsburgh in April 2002. The agents obtained a warrant and searched the Ford Explorer, which was parked in Patton's driveway, on April 18. In the hidden compartment of the Explorer the agents discovered 50 "bricks" of heroin, 617 grams of crack, and a loaded firearm. The Explorer also contained documents in Patton's name.

Patton and Lee were indicted and jointly tried on various drug charges in the United States District Court for the Western District of Pennsylvania. During trial, a

4

number of individuals involved in the drug conspiracy, including Beasley and Lyles, testified to Patton and Lee's involvement in the conspiracy. The Government adduced recorded telephone conversations between Patton and other individuals that implicated Patton in the conspiracy. The Government's evidence against Lee consisted of witness testimony. The jury found Patton and Lee guilty of the respective charges against them, and this timely appeal followed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## A.

Patton argues that the District Court erred in denying his motion for a dismissal of the charges against him pursuant to his allegedly unconstitutional warrantless arrest. As a preliminary matter, Patton and the Government disagree about whether this issue was preserved for our review. Patton first raised it by filing a pro se motion in the District Court to set aside his conviction on the grounds that his arrest was unconstitutional. Patton filed this motion after trial, but before sentencing. The District Court construed the motion as a Notice of Appeal because, as Patton explains, the deadline for filing pre-trial motions had passed.

The Government argues that an issue raised in a "pretrial" motion filed after the end of the trial is not preserved. It therefore asserts that we should assess the

constitutionality of the arrest under the plain error standard. Fed. R. Crim. P. 52(b).

Patton proposes a rule that an issue should be considered preserved if: it is raised in a

pretrial motion, the district court holds a hearing on the motion, and the court rules that

the matter will not be reconsidered. Patton argues that under this rule the issue was

preserved, so he invokes the familiar two-tiered standard in which we review the trial

court's factual determinations for clear error and its legal determinations de novo. *See*,

*e.g.*, *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

We decline to address Patton's proposed rule, partly because we do not find any

indication in the docket that the District Court held a hearing on the pro se motion, and

partly because Patton's argument fails on the merits. His arrest was constitutional.

The Fourth Amendment provides that "the right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no warrant shall issue, but upon probable cause." A warrantless arrest is

constitutional if, "at the moment the arrest was made, the officers had probable cause to

make it – whether at that moment the facts and circumstances within their knowledge and

of which they had reasonably trustworthy information were sufficient to warrant a prudent

man in believing that the [suspect] had committed or was committing an offense." *United*

*States v. Kithcart*, 134 F.3d 529, 531 (3d Cir. 1998) (quoting *Beck v. Ohio*, 379 U.S. 89,

91 (1964)) (internal quotation marks omitted).

6

In this case, federal agents had a warrant to search the Ford Explorer in Patton's driveway, in which they found heroin, crack, and a firearm. Patton argues that he was not observed engaging in criminal activity with respect to the Explorer and therefore, his warrantless arrest violated his Fourth Amendment rights due to lack of probable cause. Although the Explorer was registered to another individual, the fact that it was parked in Patton's driveway, combined with wiretap evidence implicating Patton in the drug conspiracy, was sufficient to constitute probable cause to believe that Patton "had committed or was committing an offense" involving the drugs and the gun. *See id.* We conclude that Patton's arrest did not violate his Fourth Amendment rights, and the District Court committed no error with regard to this issue.

B.

Second, Patton argues that the District Court erred in ruling that he did not have standing to challenge the constitutionality of the search of the Ford Explorer, conducted pursuant to a warrant based on allegedly illegal electronic surveillance. "We exercise plenary review of standing . . . issues, but review for clear error the factual elements underlying the District Court's determination of standing." *Gen. Instrument Corp. v. Nu-Tek Elec. & Mfg., Inc.*, 197 F.3d 83, 86 (3d Cir. 1999) (internal citations omitted).

The Supreme Court has stated that "a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or

7

seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (internal citations omitted). With respect to Fourth Amendment protection, "[s]tanding . . . requires that the individual challenging the search have a reasonable expectation of privacy in the property searched and that he manifest a subjective expectation of privacy in the property searched." *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000) (internal citations omitted).

Patton argues that he had a reasonable and actual expectation of privacy in the Ford Explorer because it contained documents in his name. The District Court decided otherwise, noting that at the time of the search Patton disavowed any ownership right in the vehicle and stated that he didn't know to whom it belonged. Patton does not dispute this factual finding. The District Court did not err in deciding that Patton failed to demonstrate or "manifest a legitimate expectation of privacy in the Ford Explorer" and, consequently, had no standing to challenge its search.

## C.

Third, Patton argues that the District Court erred in denying his motion to suppress evidence obtained via allegedly illegal wiretaps. "We review *de novo* the question of whether a full and complete statement of necessity for a wiretap was made in the application," and "we will review the [issuing] court's determination of necessity for an abuse of discretion." *United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir. 1992). "We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the district court's properly found

8

facts." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (internal citation omitted).

Before a court can authorize electronic surveillance in connection with a government investigation, the government must provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Patton argues that the Government's wiretap application failed to list alternative unsuccessful investigative procedures. He asserts that conventional investigative techniques yielded bountiful evidence in this case. Consequently, Patton argues that the wiretaps were illegal and the evidence obtained should have been suppressed by the District Court.

The Government contends that investigators had been unable to fully penetrate the conspiracy using conventional investigative techniques. The Government need not "exhaust all other investigative procedures before resorting to electronic surveillance," *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997), but need only "show that other [conventional investigative] techniques [were] impractical under the circumstances and that it would [have been] unreasonable to require pursuit of those avenues of investigation," *United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976).

The affidavits that the Government submitted as part of the wiretap application explained clearly and specifically why the wiretaps were needed. To cite a few examples,

the affidavits stated that: (1) one of the target locations could not be observed through traditional surveillance techniques because there were few houses in the area, allowing outsiders to be easily detected, (2) the drug trafficking ring was secretive, and therefore a newcomer (whether a confidential informant or undercover officer) would be unlikely to be entrusted with information that would forward the investigation, and (3) because the drug trafficking ring relied on cellular telephones, investigators could not deploy the traditional technique of using telephone records to locate a physical address that should be subjected to surveillance.

In these affidavits, the Government met its burden of showing that conventional investigative techniques were "impractical under the circumstances." *See id.* The District Court did not err in denying Patton's motion for suppression of the evidence collected via wiretaps.

### D.

Finally, Patton argues that the District Court erred in denying his motion for judgment of acquittal based on insufficient evidence for the conspiracy and possession charges. "When reviewing a jury verdict for sufficiency of the evidence, we 'view[] the evidence in the light most favorable to the government [and] . . . sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Cunningham*, 517 F.3d 175, 177 (3d Cir. 2008) (internal quotation marks and citation omitted). We have held that:

10

To prove a conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. The government may prove these elements entirely by circumstantial evidence . . . . The government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants. However, the government must proffer sufficient evidence from which a jury could have concluded that each drug transaction in which [the defendant] was involved was a step in achieving the conspiracy's common goal of distributing [drugs] for profit.

*United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). Furthermore, "[i]t is well-settled that a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *Id.*

Patton argues that there was insufficient evidence that he was any more than a mere buyer or seller of drugs, or that he was involved in the conspiracy. The record, however, indicates otherwise. Patton introduced Lyles to the heroin dealer in New Jersey, after which Lyles began receiving regular shipments of large quantities of heroin. Introducing two individuals is not a criminal act, but in this case it indicates a commonality of purpose between Patton and the other members of the drug conspiracy. Patton himself transported a shipment of heroin from New Jersey to Pittsburgh and arranged for alternate transportation after the police apprehended a courier en route. He received portions of the heroin shipments on credit and resold them for a profit. Viewing the evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that Patton was a member of the drug conspiracy.

11

Patton also challenges the sufficiency of the evidence for his conviction of "(1) knowingly possess[ing] a controlled substance with (2) the intent to distribute it." 21 U.S.C. § 841(a)(1). "Possession can be actual or constructive, and may be proven through either direct or circumstantial evidence. Constructive possession may be found if the defendant was knowingly in a position, or had the right, to exercise 'dominion and control' over the drug." *United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006) (internal citations omitted).

Patton argues that there was insufficient evidence that he possessed the heroin and cocaine seized from the Ford Explorer. Patton notes that he was not the owner of the Explorer, did not have actual possession of its contents, and was not shown to have exercised dominion or control over the drugs found therein. Again, the record indicates otherwise. Patton knew how to open the Explorer's hidden compartment, he had previously transported drugs in the vehicle, it was parked in his driveway, and he was home when the agents searched it. A rational jury could have found beyond a reasonable doubt that Patton exercised dominion and control over the drugs in the Explorer.

Patton also argues that since he did not have standing to challenge the Explorer's search, he could not have had constructive possession of the drugs in the vehicle. The legal test for standing to challenge a search and seizure differs from the test for showing constructive possession, and Patton cites no authority showing that the two should be analytically linked. Moreover, it does not strain logic to conclude that Patton

12

constructively possessed the drugs, even though they were being kept in a place in which he had no reasonable expectation of privacy. The District Court did not abuse its discretion in concluding that Patton constructively possessed the drugs.

III.

Having considered Patton's claims, we turn to Lee's claims.

A.

First, like Patton, Lee argues that the District Court erred in denying his motion for judgment of acquittal based on insufficient evidence for the conspiracy charge. Lee acknowledges that he was a drug dealer and that many of the conspirators knew him, but argues that as a mere buyer and seller of drugs he was not involved in the conspiracy. We disagree. Witness testimony indicates that Lee often retrieved portions of cocaine shipments from the stash house, drugs for which he did not pay up front. He later dropped off payments at the stash house or paid an associate of Beasley, one of the conspiracy's organizers. Another witness testified that he supplied Lee with cocaine, which Lee redistributed for a profit. Viewing the evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that "each drug transaction in which [Lee] was involved was a step in achieving the conspiracy's common goal of distributing [drugs] for profit." *Gibbs*, 190 F.3d at 197.

B.

Second, Lee argues that the District Court erred in failing to sever his trial from Patton's, which caused the jury to be prejudicially tainted against him. Since Lee did not move to have his trial severed, he did not preserve that issue for appeal and we review it for plain error. Fed. R. Crim. P. 52(b).

The Supreme Court has stated that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together . . . . They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Notwithstanding this preference, a trial court may order severance when joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14. Severance is appropriate where there is a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Lee argues that the evidence against him was slight in comparison to the substantial evidence implicating Patton in the drug conspiracy. The evidence against Patton and Lee consisted of the witness testimony of other individuals charged in the conspiracy, with additional evidence against Patton in the form of wiretap recordings and the drugs seized from the Ford Explorer. Patton was charged with and convicted of more criminal counts than was Lee. Nonetheless, we find unpersuasive Lee's assertion that he

14

was likely convicted for conspiracy based on the evidence against Patton. Prejudice does not necessarily exist simply because "all evidence adduced [in a joint trial] is not germane to all counts against each defendant or some evidence adduced is more damaging to one defendant than others." *United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993) (internal quotation marks and citations omitted). Lee does not provide a convincing explanation about why the jury in this case was unable to "compartmentalize" the evidence against him from the evidence against Patton. *See United States v. Adams*, 759 F.2d 1099, 1112-13 (3d Cir. 1985). The District Court did not commit plain error by not severing the trial.

C.

Third, Lee argues that he was denied his rights to due process and a fair trial due to prosecutorial misconduct during closing arguments, specifically with respect to the prosecutor's comment on Lee's ability to present evidence. We review Lee's constitutional claim under a de novo standard of review. *United States v. Gordon*, 290 F.3d 539, 546 (3d Cir. 2002). Even if prosecutorial misconduct has occurred, we will not reverse the conviction if the error was harmless. *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995). "The harmless error doctrine requires that the court consider an error in light of the record as a whole," including "the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any

15

curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Id.*

Lee was convicted of conspiracy on the basis of witness testimony of other individuals charged in the conspiracy. Lee did not testify on his own behalf or present evidence, but challenged his conspiracy charge on the grounds that the witnesses who testified against him were not credible, there was no physical evidence tying him to the conspiracy, and he maintained lawful employment.

During closing arguments, Lee's counsel presented Lee's legitimate maintenance business as indicative that he was not involved in the conspiracy. He suggested that business records seized by the government demonstrated the existence of his legitimate employment during the time period in which Lee was implicated in the conspiracy. The prosecutor rebutted that, to the contrary, there were no records indicating that Lee maintained a legitimate business prior to April 2002, when multiple conspirators were arrested. In this context, the prosecutor stated that "if there were documents, you'd see them, because the defendant has the ability to introduce evidence too." The District Court sustained Lee's objection that the government had the burden of proving his guilt and gave a curative instruction to the jury. Considering the record as a whole, we conclude that the instruction to the jury was sufficient and no constitutional error occurred.

Even if we were to find that the prosecutor's comment was a constitutional violation, the error was harmless. The challenged comment was cursory and related

16

solely to Lee's apparently inaccurate suggestion that he maintained lawful employment during the conspiracy. A sufficient curative instruction immediately followed Lee's objection. Most importantly, substantial witness testimony implicated Lee in the drug conspiracy. Thus, even if there were constitutional error, we would not reverse.

D.

Fourth, Lee argues that his Sixth Amendment rights were violated when the District Court improperly enhanced his sentence on the basis of a prior conviction. Since Lee did not object to the enhancement, we review the District Court's decision for plain error. *See United States v. Irizarry*, 341 F.3d 273, 306 (3d Cir. 2003). We find none.

Under 21 U.S.C. § 841(b)(1)(A), "[i]f any person commits . . . a [drug] violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years." The Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The Supreme Court's opinion in *Shepard v. United States*, 544 U.S. 13 (2005), which we will discuss below, did not eliminate the *Apprendi* prior conviction exception. *United States v. Coleman*, 451 F.3d 154, 159-60 (3d Cir. 2006).

In this case, the charges for which Lee was convicted carried a ten-year mandatory minimum sentence, pursuant to 21 U.S.C. § 841(b)(1)(A)(ii). The government filed an

information and notice of prior conviction pursuant to 21 U.S.C. § 851, thereby increasing Lee's mandatory minimum sentence to twenty years, to which he was sentenced. Lee argues that his Sixth Amendment rights were violated when his statutory minimum sentence was enhanced based on a judicial determination of the nature of his prior conviction, a fact that was not submitted to or found by the jury.

Lee's reliance on the Supreme Court's decision in *Shepard* is misplaced, because the key facts of that case are different than the facts here. The *Shepard* decision dealt with a sentencing enhancement under the Armed Career Criminal Act (ACCA) based on a defendant's prior conviction under a state burglary statute. 544 U.S. at 15-16. As the Court explained, a conviction for the "generic" crime of burglary is a predicate for ACCA enhancement. *Id.* at 20-21. However, some states have expanded the definition of burglary (for example, including not only buildings but also boats or motor vehicles), and a burglary conviction in these states might not serve as a predicate for ACCA enhancement. *Id.* at 15-16. Thus, in *Shepard*, it was debatable whether a state burglary conviction could serve as a predicate felony under the ACCA, because the sentencing court needed to determine whether the applicable state burglary statute was "generic." *Id.* at 18.

By analogy, Lee argues that the jury should have been charged with determining whether his prior conviction constituted a predicate "felony drug offense" under § 841(b)(1)(A). His argument fails because the prior conviction in question was under 21

18

U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine and 50 grams of cocaine base).[1] Unlike in *Shepard*, which dealt with whether a burglary conviction is "generic," there can be no debate that a conviction under § 846 constitutes a "felony drug offense." Indeed, although Lee argues that we should remand so that this question can be considered by a jury, he does not explain how a rational jury could fail to find that a § 846 conviction is a "felony drug offense." His prior conviction unquestionably fits within the statutory language of § 841(b)(1)(A). No reasonable jury could find otherwise.

Lee cites the dissent in *Shepard* to support his argument that we should reverse the District Court. However, the controlling law of *Shepard* is of course the majority opinion. We conclude that the District Court did not plainly err when it relied upon the fact of Lee's prior drug conviction in determining his sentence.

### E.

Finally, Lee argues that his Sixth Amendment rights to notice and a jury trial were violated when the District Court sentenced him based on drug amounts not reflected in the verdict and improperly attributed to him. We "review factual findings relevant to the [Sentencing] Guidelines for clear error and . . . exercise plenary review over a district

---

[1]Lee pled guilty and was sentenced to 51 months' imprisonment and four years' supervised release.

19

court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

"[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (internal citation omitted).

Lee argues that while the jury found the amount of drugs involved in the conspiracy as a whole, it failed to return a verdict with a quantity of drugs specifically attributable to him. Neither the jury nor District Court were required to do so. As we have held previously:

> In drug conspiracy cases, *Apprendi* requires the jury to find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator. The finding of drug quantity for purposes of determining the statutory maximum is, in other words, to be an offense-specific, not a defendant-specific, determination. The jury must find, beyond a reasonable doubt, the existence of a conspiracy, the defendant's involvement in it, and the requisite drug type and quantity involved in the conspiracy as a whole. Once the jury makes these findings, it is for the sentencing judge to determine by a preponderance of the evidence the drug quantity attributable to each defendant and sentence him or her accordingly, provided that the sentence does not exceed the applicable statutory maximum.

*United States v. Phillips*, 349 F.3d 138, 142-43 (3d Cir. 2003) (overruled on other grounds). In this case, Lee was found guilty beyond a reasonable doubt of (1) conspiracy

20

to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, and (2) possession with intent to distribute five kilograms or more of cocaine. The drug quantities for which Lee was properly sentenced by the District Court were based on facts reflected in the jury's guilty verdict. *See Blakely*, 542 U.S. at 303.

Lee also argues that the District Court erred considering his probationary status, a fact that was never submitted to the jury. A sentencing court, however, may properly determine facts relevant to the advisory Sentencing Guidelines by a preponderance of the evidence, *see Grier*, 475 F.3d at 568, as the District Court did in this case. We thus conclude that the District Court did not err in its determination of Lee's sentence and, consequently, that Lee suffered no violation of his Sixth Amendment rights.[2]

## IV.

For the foregoing reasons, we will affirm the judgments of the District Court.

---

[2]Lee states that absent these supposed Sixth Amendment violations, his Guidelines imprisonment range would have been 151 to 188 months. But this argument does not take into account his statutory minimum sentence of 240 months, which we upheld in Section D, above. Therefore, even if Sixth Amendment violations had taken place, they would not have affected Lee's sentence, which according to 21 U.S.C. § 841(b)(1)(A)(ii) must be at least 240 months.