**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 10-3477 and 11-3166

UNITED STATES OF AMERICA

v.

OMARI HOWARD PATTON, a/k/a "O"

Omari Howard Patton,

Appellant No. 10-3477

v.

GARY LEE, a/k/a GENERAL

Gary Lee,

Appellant No. 11-3166

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. Nos. 2-02-cr-00093-001 and 2-02-cr-00093-007)
District Judge:  Honorable Donetta W. Ambrose

Argued on April 26, 2012

Before:  GREENAWAY, JR, ROTH and TASHIMA*, <u>Circuit Judges</u>

_____

*Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth
Circuit, sitting by designation.

1

(Opinion filed: October 23, 2012)

Lisa B. Freeland, Esquire
Federal Public Defender
Elisa A. Long, Esquire
Assistant Federal Public Defender
Peter R. Moyers, Esquire **(Argued)**
Staff Attorney
Office of the Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

Counsel for Appellant Gary Lee

Roger A. Cox, I, Esquire **(Argued)**
Cox & Cox
350 Greater Butler Mart
Butler, PA 16001-3284

Counsel for Appellant Omari Howard Patton

David J. Hickton, Esquire
United States Attorney
Donovan J. Cocas, Esquire **(Argued)**
Assistant United States Attorney
Rebecca R. Haywood, Esquire
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

Counsel for Appellee

## O P I N I O N

**ROTH**, Circuit Judge:

In this consolidated matter Omari Patton and Gary Lee appeal the District Court's August 11, 2010, orders denying their 28 U.S.C. § 2255 petitions for relief. They specifically assert that the trial court infringed upon their Sixth Amendment right to a public trial when members of their families and the public were denied entry into the courtroom to observe voir dire. For the reasons that follow, we will affirm the District Court's judgments.

## I. **Background**

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

From 1998 to 2002, Patton and Lee participated in a high-volume cocaine and heroin trafficking network. In March 2003, they were indicted on several charges, including conspiracy to distribute at least a kilogram of heroin and at least five kilograms of cocaine, in violation of 21 U.S.C. § 846.

On November 8, 2004, at 10:45 a.m., the District Court commenced jury selection, and informed Patton's and Lee's attorneys that individual voir dire would occur in the jury room. Approximately five minutes later, the venire of sixty persons was brought

3

into the courtroom.[1] The court seated some of the venire in the jury box and the rest in the spectator benches. The courtroom was crowded because the spectator benches accommodated only thirty-two people, with some room for additional people in the rear area. During the seventy-five minute morning session, the District Judge introduced herself, counsel and the defendants, gave general instructions, asked general questions, and distributed a questionnaire. Neither Patton's nor Lee's counsel objected to anything that transpired.

After the lunch recess, the District Court reconvened outside the presence of the jury and reiterated that individual voir dire, including any for cause challenges, would be conducted in the jury room. No one objected. After the venire reentered the courtroom, the court asked several general questions and then the judge, counsel, Patton, and Lee retired to the jury room for individual voir dire. After the individual voir dire, the judge, the parties, and their counsel returned to the courtroom. The government utilized two peremptory challenges at sidebar, the first twelve individuals were seated as the jury and the following two as alternates. The court then swore the jury in and instructed them before adjourning.

After a two week trial, Patton and Lee were found guilty; we subsequently affirmed their convictions. *See United States v. Patton*, 292 F. App'x 159 (3d Cir. 2009). In January 2010, Patton and Lee filed 28 U.S.C. § 2255 petitions alleging, among other

---

[1] Patton asserts that no members of the public were in the courtroom because the voir dire was composed of ninety-six members. His claim, however, is contradicted by the jury office records, which indicate that only sixty potential jurors were called into the courtroom for voir dire.

claims, that the trial courtroom was closed to their families and the general public during jury selection on November 8, 2004.

In his habeas petition, Patton averred that upon entering the courthouse on the morning of jury selection, he noticed several members of his family in the hallway outside the courtroom. According to Patton, once proceedings commenced, but before the venire entered, the judge told the court reporter to turn off the recorder and instructed the U.S. Marshals to close the courtroom doors until voir dire and jury empanelment were completed.[2] When Patton asked his trial counsel why his family members were not present, he was informed that the judge closed the courtroom because it was too small to fit all the jurors and the public at the same time. At this time, Patton also noticed a U.S. Marshal standing in front of the Courtroom entrance door. Patton claimed that during the afternoon session the courtroom remained closed to the public, even when seats became available to accommodate potential observers.

In support of his contention that the courtroom was inaccessible to the public, Patton supplied an affidavit from his brother stating that he was turned away from the courtroom when he attempted to enter at approximately 10:00 a.m. Patton's brother did not indicate that he had attempted to enter the courtroom at any other time.

Lee's petition contains similar averments. After noticing his family near the entrance to the courtroom, Lee questioned his trial counsel about their absence. Lee's counsel explained that there was not enough room for everyone but it did not matter because the court was only going to be conducting the jury selection and no testimony

---

[2] The trial transcript reflected that the court held a discussion off the record.

5

would be heard that day. Lee also supplied affidavits from family members claiming that they were denied entry into the courtroom by U.S. Marshals. No family member, however, identified the time that they were allegedly denied access or indicated whether they attempted to enter more than once.

The government opposed both petitions. The judge denied the § 2255 petitions without conducting an evidentiary hearing. Lee and Patton appealed. Certificates of appealability were granted, and we consolidated the two appeals.

## II. <u>Analysis</u>

The District Court had jurisdiction pursuant to 28 U.S.C. § 2255, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We apply a clearly erroneous standard to the District Court's factual findings and exercise plenary review of its legal conclusions. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). The court's decision not to hold an evidentiary hearing is reviewed for an abuse of discretion. *Id.*

Patton and Lee assert that the District Court abused its discretion when it failed to conduct an evidentiary hearing on their claims. Although a district court has discretion on whether to hold an evidentiary hearing, § 2255 dictates that a hearing shall occur "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). If the petitioner's allegations raise an issue of material fact, a hearing must occur. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992) (citations omitted). Consequently, a court abuses its discretion if it fails to conduct an evidentiary hearing when the record is inconclusive on whether the petitioner is

6

entitled to relief. *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) (citations omitted).

The Sixth Amendment guarantees the "accused . . . the right to a . . . public trial," U.S. Const. amend. VI, and extends that guarantee to the voir dire of potential jurors. *Presley v. Georgia*, 130 S.Ct. 721, 724 (2010). This right, however, is not absolute. An unjustified courtroom closure only infringes a defendant's Sixth Amendment rights if it undermines the values the Supreme Court identified in *Waller v. Georgia*, 467 U.S. 39 (1984) as fundamental to the public trial guarantee. *United States v. Gupta*, 650 F.3d 863, 867 (2d Cir. 2011), *reh'g en banc granted Sept. 15, 2011* (quoting *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)). If the closure did not jeopardize or subvert these values, which (1) ensure a fair trial, (2) remind the government and judge of their responsibility to the accused and importance of their functions, (3) encourage witnesses to come forward, and (4) discourage perjury, it did not offend the Sixth Amendment because the closure is considered trivial. *Id.* at 867; *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007) ("A courtroom closing is trivial if it does not implicate the values served by the Sixth Amendment as set forth in *Waller*.") (internal quotationmarks and citations omitted); *see United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003); *Braun v. Powell*, 227 F.3d 908, 918-20 (7th Cir. 2000).

In determining whether a closure was trivial, we examine the actions of the court and their effect on the conduct of the trial. *Gupta*, 650 F.3d at 867 (citations omitted). Although triviality is not determined by a single factor, *Morales v. United States*, 635 F.3d 39, 43 n.7 (2d Cir. 2011), a closure was trivial and did not implicate the values

7

advanced by the public trial guarantee when the trial judge was unaware of the closure and it was limited in both scope and duration. *See United States v. Al-Smadi*, 15 F.3d 153, 154 (10th Cir. 1994) (concluding that before a defendant can claim a violation of his Sixth Amendment rights, "some affirmative act by the trial court meant to exclude persons from the courtroom" must occur); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975).

From the record here, we conclude that the alleged courtroom closure was trivial. Patton and Lee averred that members of their family and the general public were barred from entering the courtroom on November 8, 2004, at the commencement of jury selection when the courtroom was full. Other attempts to enter, if any there were, are unclear as to time and number. The government took the position that an evidentiary hearing was not necessary because the District Judge had determined that:

> [T]he transcript of the voir dire contains absolutely no suggestion that the courtroom was closed to the public . . . during the proceeding. The transcript is consistent with this Court's regular practice, which does not involve the exclusion of the public. It is also consistent with my own recollections of the proceeding.

Although a hearing is necessary if the appellants' factual allegations raise an issue of material fact, the allegations here are amorphous. The appellants have not presented hard facts beyond a denial of admission at the commencement of the proceedings. The remaining averments are vague and do not describe times or additional attempts by family members to enter the courtroom.

To the extent that members of Patton's and Lee's families were denied entry into the courtroom because it was filled to capacity, no constitutional violation occurred. *See*

8

*Gibbons v. Savage*, 555 F.3d 112, 116 (2d Cir. 2009) ("[N]o single member of the public has a right to gain admittance to a courtroom if there is no available seat. That is, so long as the public at-large is admitted to the proceedings, the Sixth Amendment does not guarantee access to unlimited numbers"). The appellants' affidavits speak in definite terms of closure only at the outset when the courtroom was crowded. If appellants had wished to present further specific facts to the court, they should have been more precise in their statements. We conclude, therefore, that the closure was trivial, that appellants' Sixth Amendment rights were not violated, and that the record conclusively shows that appellants are not entitled to relief.[3] Thus, no hearing was required.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.[4]

---

[3] In their briefs, Patton and Lee assert that Judge Ambrose was aware that the court was closed during the afternoon session because individual voir dire occurred behind closed doors in the jury room. This fact is constitutionally irrelevant. Applying plain error review, we previously concluded that the Sixth Amendment's public trial guarantee was not violated when individual voir dire occurred in a closed jury room adjacent to the courtroom. *See United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011); *see also Gibbons v. Savage*, 555 F.3d 112, 121 (2d Cir. 2009) (noting in passing that no constitutional violation occurred when individual voir dire was conducted in a room adjacent to the courtroom); *Commonwealth v. Harris*, 703 A.2d 441, 446 (Pa. 1997).

[4] Patton also asserts that the District Court erred when it denied his motion seeking discovery on whether the U.S. Marshals in the Western District of Pennsylvania have a "policy" of excluding the public from courtrooms during voir dire. This argument is meritless. Patton failed to provide any evidence beyond raw speculation that such a policy exists. *See Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011).