# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1499

_____

Joel Marvin Munt

*Petitioner - Appellant*

v.

Kent Grandlienard

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 9, 2016
Filed: July 14, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and ERICKSON,[1] District
Judge.

_____

SMITH, Circuit Judge.

Joel Marvin Munt was convicted by a jury in Minnesota state court of the
shooting death of his ex-wife and of kidnaping his three children. Munt sought habeas

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court
for the District of North Dakota, sitting by designation.

relief in federal court, arguing that the state trial court violated the United States Constitution when it refused to strike a juror, identified by the initials B.S., as biased. The district court[2] denied Munt's petition for habeas relief. We affirm.

## I. *Background*

Munt murdered his ex-wife. Munt approached her car on a city street, shot her in the head four times, kidnaped his three children from his wife's car and then commandeered a bystander's vehicle in which to flee. A grand jury indicted Munt on 17 counts for various offenses.[3] The case proceeded to a jury trial, where Munt raised a defense of not guilty by reason of mental illness.

During voir dire, the court and counsel for each side questioned each potential juror. When Juror B.S. was questioned, the trial court instructed her that Munt was presumed innocent until the state met its burden and proved his guilt beyond a reasonable doubt. The court informed her that it would give her additional instructions concerning the law that was applicable to the case. The court asked B.S. if she would be able to follow all of the court's instructions on the law, and B.S. responded, "Yes." Finally, the court concluded its questioning by asking her if she knew of any reason she could not render a fair and impartial verdict in the case, and B.S. responded, "No."

When Munt's counsel questioned B.S., he asked B.S. what, in her mind, would make a good juror. B.S. answered:

---

[2]The Honorable Susan Richard Nelson, United States District Court for the District of Minnesota.

[3]Four counts of first-degree murder, one count of second-degree murder, two counts of first-degree aggravated robbery, three counts of second-degree assault, three counts of kidnapping, one count of drive-by shooting, and three counts of criminal vehicular operation causing injury.

In my mind somebody that is fair and very open minded and doesn't make a decision until after—like they have received all the evidence and heard both sides of the story; cuz you can't really make a good decision without knowing everything there is to know about the case.

Munt's counsel then asked B.S. what qualities she had that would make her a good juror. B.S. replied:

I don't know—I really don't know much about this case so therefore I am pretty impartial as to anything until I learn more about it and as far as I know I am pretty honest and kind of carefree I guess, I don't know.

Munt's counsel also questioned B.S. on what she thought of Munt. She responded, "I don't know—I don't really know him and I don't know much about the case so as far as I am concerned he is innocent until somebody can prove [to] me otherwise." Regarding mental illness specifically, Munt's counsel inquired about B.S.'s experiences with mental illness. B.S. stated that she was not aware of any family or friends suffering from mental illness but that during an internship at the state hospital she had contact with patients suffering from mental illness. B.S. estimated that she spent no more than five to ten minutes with any individual patient. Munt's counsel did not challenge B.S. for cause nor did he elect to use a peremptory challenge against her.

Next, the prosecutor questioned B.S. and had the following exchange with her:

[Q.] I just want your opinion; what—in general what do you think if somebody comes into court and says, yeah I did it but I am mentally ill and—you know—I am really not responsible for what I did, what's—what's your thought on that?

-3-

A. My personal opinion about it if you confess then you are aware that you did, so basically mental illness or not you are [sic] of what you did so you should be held responsible.

The prosecutor did not ask any further questions and did not challenge B.S. for cause. Munt's counsel immediately asked the court if he could approach. At the bench conference, Munt's counsel stated that he wanted to put on the record a challenge for cause, saying, "I think I still have [the] option; I just didn't want to go back and forth." The trial court acknowledged the challenge but stated, "We are not going backwards." The trial court then seated B.S. on the jury.

At the close of the trial, the jury returned a guilty verdict. Munt appealed on several grounds, including his juror-bias claim. The Minnesota Supreme Court rejected Munt's juror-bias argument, holding that Munt failed to establish that B.S. expressed actual bias for two reasons. First, it reasoned that B.S.'s answer to the prosecutor's question only referred to "mental illness," not the legal requirements for the mental-illness defense. Second, it gave great weight to B.S.'s assurance that she could follow the trial court's instructions on the law and could be a fair and impartial juror.

Subsequently, Munt brought a separate habeas corpus action in federal court, arguing that the Minnesota state courts violated his right to an impartial jury under the Sixth Amendment of the United States Constitution. The district court disagreed and denied his petition for relief. Nevertheless, the district court determined that resolution of Munt's Sixth Amendment claim as it pertained to B.S. was "debatable among reasonable jurists" and granted Munt a certificate of appealability.

II. *Discussion*

Munt appeals the district court's denial of his habeas petition, renewing his argument that he was deprived of an impartial jury. According to Munt, B.S.

expressed an open and unequivocal bias against Munt's mental-illness defense even though B.S. gave general assurances that she would follow the law. As such, Munt contends that the Minnesota state courts unreasonably refused to follow and apply the United States Supreme Court's decision in *Morgan v. Illinois*, 504 U.S. 719 (1992).

In a habeas proceeding, we review de novo the district court's conclusions of law, but we review its factual findings for clear error. *Bobadilla v. Carlson*, 575 F.3d 785, 790 (8th Cir. 2009). The writ of habeas corpus is meant to secure the release of a state prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). We will not grant a state prisoner's application for a writ of habeas corpus unless the prisoner's claim "was adjudicated on the merits in State court proceedings" and the adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" clause and "unreasonable application" clause of § 2254(d)(1) have "independent meaning." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The "contrary to" clause "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id.* (listing "diametrically different," "opposite in character or nature," or "mutually opposed" as definitions of "contrary"). An "unreasonable application" of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context. *See id.* at 407. In determining whether the state court unreasonably applied Supreme Court

precedent, our inquiry is an objective one. *See id.* at 409–10 (counseling federal habeas courts against using an "all reasonable jurists" standard because it would tend to mislead courts to focus on a subjective inquiry, giving undue weight to split panel decisions or the mere existence of conflicting authority). In making this inquiry, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410.

Under the Sixth Amendment, "the accused shall enjoy the right to . . . an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The essence of the constitutional right to an impartial jury is the guarantee of "a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (quotation omitted). "[I]f a jury is to be provided the defendant, . . . the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan*, 504 U.S. at 727 (citations omitted).

In *Morgan*, the Supreme Court addressed a defendant's "ability to exercise intelligently his complementary challenge for cause against those biased persons on the venire who as jurors would unwaveringly impose death after a finding of guilt." *Id.* at 733. The Court held that a defendant is "entitled, upon his request, to inquiry discerning those jurors who, even prior to the State's case in chief, had predetermined the terminating issue of his trial." *Id.* at 736. The *Morgan* Court rejected the state's argument that a juror's general assurances to follow the law as given by the trial court are sufficient to ensure juror impartiality. *Id.* at 734–35. Munt maintains that a reasonable application of *Morgan* to the facts of his case would have resulted in the trial court removing B.S. from the jury.

*Morgan* is distinguishable from Munt's case. There, a defendant, charged with a capital offense, sought to ask a specific question of a juror who might be asked to consider whether he lived or died. *See id.* at 729–30. The *Morgan* Court explained that during voir dire, certain inquiries must be permitted to ensure constitutional

protections, "particularly in capital cases." *Id.* at 730 (citations omitted). Munt was free to inquire as to the impartiality of B.S. and all other jurors. He did, and he did not request to further question B.S. after not challenging her for cause. During the bench conference, Munt only noted his objection to B.S. based on her answer to the prosecutor's question. Munt's reliance on *Morgan* is misplaced. *Morgan* did not deal with *removing* a juror for bias. Rather, *Morgan* set forth certain safeguards that ensure a defendant is able to "exercise intelligently" his right to challenge a juror for cause. *Id.* at 733. Moreover, *Morgan*'s safeguards were in the context of a capital case. The Minnesota Supreme Court did not unreasonably apply *Morgan*.

Munt also argues that the trial court unreasonably determined that B.S. did not express actual bias. In habeas proceedings, we "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (quoting 28 U.S.C. § 2254(e)(1)). Moreover, as Munt acknowledges, we afford trial courts substantial deference in determining juror bias. *See Skilling v. United States*, 561 U.S. 358, 396 (2010) (explaining that "the deference due to district courts [in determining juror bias] is at its pinnacle"). In order to prove "actual bias," Munt must point to clear and convincing evidence that B.S. made "an impermissible affirmative statement" that is unequivocal. *Williams v. Norris*, 612 F.3d 941, 954–55 (8th Cir. 2010) (citation omitted).

Munt contends that B.S. made such a statement in response to the prosecutor asking for her opinion where someone disclaims responsibility due to mental illness. B.S. stated that in her opinion "if you confess then you are aware that you did, so basically mental illness or not you are [sic] of what you did so you should be held responsible." B.S.'s statement in isolation is insufficient for Munt to demonstrate that the Minnesota state courts unreasonably determined that B.S. was impartial. B.S.'s statement is not unequivocal. She had previously assured the court that she would follow all of the court's instructions on the law and would render a fair and impartial

verdict in the case. B.S.'s statement of her opinion and her assurances of following the law and fairly deciding Munt's case are not in conflict. When responding to the prosecutor's question, the court had not yet instructed B.S. as to the mental illness defense. B.S. merely expressed her opinion without any knowledge of what the law required of her. Even if B.S.'s statements amounted to a contradiction, the trial court was in a unique position to make the necessary credibility determination. *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985) (noting that a finding of juror bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province"). We will not second-guess such a determination absent clear and convincing evidence. The Minnesota trial court did not unreasonably determine that B.S. was impartial.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____