## United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3013
_____

Tracy Alan Zornes,

*Petitioner - Appellant*,

v.

William Bolin,

*Respondent - Appellee*.
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 17, 2022
Filed: June 27, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Tracy Zornes is serving a life sentence for murder in Minnesota. He brought a petition for writ of habeas corpus in the district court, alleging that the state trial court violated his right to a public trial, and that the decision of the state supreme

court upholding his conviction was contrary to, or an unreasonable application of, clearly established federal law. The district court[1] denied the petition, and we affirm.

I.

In November 2011, Zornes was convicted of two counts of first-degree murder, first-degree arson of a dwelling, and theft of a motor vehicle in Minnesota state court. *See* Minn. Stat. §§ 609.185(a)(1), 609.561, subdiv. 1, 609.52 subdiv. 2(17). The Minnesota trial court sentenced him to two consecutive life sentences without the possibility of parole.

On direct appeal, Zornes challenged the trial court's decision to exclude two people from the courtroom during jury *voir dire*. Zornes's girlfriend was present in the courtroom for two days of jury selection. She was included on a joint witness list prepared by the parties. When counsel alerted the trial court to the girlfriend's presence on her second day of attendance, the court ordered her to leave the courtroom to comply with an order sequestering witnesses. Zornes did not object.

The next day, Zornes informed the court that Robert Stivers, a brother of one of the murder victims, was present in the courtroom. Stivers was on the State's witness list. Zornes explained to the court, however, that the State "may be willing to remove him from that list and in return we would not be objecting if he wants to watch from the observation room so we don't have the jurors in eye contact with him." The State then confirmed its desire to remove Stivers from the witness list. Consistent with Zornes's proposal, the court declared that Stivers would be allowed to sit in the observation room during *voir dire*, but would not be a witness at trial.

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

-2-

Zornes argued on appeal in state court that the trial court's decision to sequester the girlfriend and to direct Stivers to watch from an observation room violated his right to a public trial under the Sixth and Fourteenth Amendments. The Supreme Court of Minnesota rejected the contentions. *State v. Zornes*, 831 N.W.2d 609, 618 (Minn. 2013). With respect to the girlfriend, the court concluded that a potential witness is distinct from the "public" generally, and that the trial court had broad discretion to exclude a witness from the courtroom. After observing that the girlfriend played a key role in Zornes's planned alibi defense, the court explained that questioning of prospective jurors can be wide ranging and cover details of trial strategy, so it is conceivable that a witness could tailor her testimony in response to what she hears during voir dire. *Id.* at 619-20. The court ultimately held that the sequestration of the defendant's girlfriend did not violate Zornes's constitutional right to a public trial. The court also ruled that the exclusion of Stivers from the courtroom during *voir dire* was "too trivial to implicate Zorne[s]'s Sixth Amendment right to a public trial," and found it unnecessary to address whether Zornes invited the alleged error. *Id.* at 620-21.

After failing to obtain post-conviction relief in state court, Zornes filed a petition for writ of habeas corpus in the district court. As relevant here, Zornes challenged the state court's disposition of his claim alleging a violation of the right to a public trial. The district court denied relief. The court reasoned that the state supreme court's decision was not contrary to clearly established federal law, because the Supreme Court has not addressed the constitutionality of partial closures of trial proceedings. The court also concluded that the state court's decision was not an unreasonable application of clearly established federal law, because any alleged error in the ruling was subject to fairminded disagreement. The district court granted a certificate of appealability, and we review the district court's conclusion *de novo*.

-3-

II.

A federal court's authority to grant a writ of habeas corpus on behalf of a state prisoner is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996. A federal court cannot grant a habeas petition with respect to any claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision involves an "unreasonable application of" federal law if the state court "correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016); *see Williams*, 529 U.S. at 407. To demonstrate an unreasonable application, a prisoner must show "that a state court's adjudication was not only wrong, but also objectively unreasonable, such that 'fairminded jurists' could not disagree about the proper resolution." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)), *cert. denied*, 141 S. Ct. 982 (2021); *see Williams*, 529 U.S. at 409-12. We evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision. *Dansby v. Hobbs*, 766 F.3d 809, 830 (8th Cir. 2014).

Zornes argues that the state court's decision is contrary to and involved an unreasonable application of two Supreme Court decisions: *Waller v. Georgia*, 467

-4-

U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam). *Waller* considered a trial court's decision to close a pretrial suppression hearing to the public. The Court ruled that it was constitutional error to close the hearing, and that to justify such a closure, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48. *Presley* held that the right to a public trial extends to the *voir dire* of prospective jurors, and clarified that the trial court must consider reasonable alternatives to closure even when they are not proposed by the parties. 558 U.S. at 213-14.

The state supreme court's decision in this case is not contrary to *Waller* and *Presley*. When evaluating Sixth Amendment claims involving the right to a public trial, this court and others have distinguished between total closures and partial closures of criminal proceedings. *See Garcia v. Bertsch*, 470 F.3d 748, 752-53 (8th Cir. 2006); *United States v. Osborne*, 68 F.3d 94, 98-99 & n.12 (5th Cir. 1995) (collecting cases). Whether a closure is total or partial depends on who is excluded during the time in question. *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013). This court applies the stringent standard announced in *Waller* to total closures, but conducts a different analysis for partial closures. *Id.*

The exclusions of Zornes's girlfriend and Stivers were both partial closures of the jury selection proceedings under this rubric; at no point did the trial court bar all members of the public from the courtroom. *Waller* and *Presley* both involved total closures. *Waller*, 467 U.S. at 42; *Presley*, 558 U.S. at 210, 214; *see Presley v. State*, 674 S.E.2d 909, 910-911 (Ga. 2009). The Supreme Court has never addressed a "partial closure" of jury selection (or any phase of a trial) in which a potential witness is sequestered or a relative of a victim is excluded at the suggestion of the defendant. Where no Supreme Court decision has confronted the specific question presented to

the state court, the court's decision cannot be contrary to clearly established federal law for the purposes of § 2254(d)(1).  *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam).  Accordingly, we conclude that the Minnesota court's decision is not contrary to clearly established federal law.

The next issue is whether the state court decision involved an unreasonable application of clearly established federal law.  As noted, *Waller* and *Presley* involved complete closures of a courtroom to the public, and did not address how a court should analyze an order excluding a prospective witness or victim's relative from attending jury *voir dire*.  Zornes argues that a "partial closure" must satisfy the same stringent standard for a complete closure discussed in *Waller*.  But this court and other courts of appeals have concluded that partial closures may be justified by a "substantial reason" without the "overriding interest" that *Waller* requires to justify a complete closure.  *Thompson*, 713 F.3d at 395; *United States v. Simmons*, 797 F.3d 409, 414 (6th Cir. 2015).  The distinction in standards is based on the view that a partial closure does not implicate the same secrecy and fairness concerns that are raised by a total closure.  *Garcia*, 470 F.3d at 752-53.  A state court reasonably could take the same analytical approach that has been followed by several federal courts of appeals.

The first "partial closure" at issue was the exclusion of Zornes's girlfriend as a potential witness under the trial court's sequestration order.  This court has held that the right to a public trial does not prohibit the sequestration of witnesses from the evidentiary portion of a trial.  We relied on the fact that sequestration lessens the danger that a witness will tailor her testimony to that of earlier witnesses, and aids in detecting testimony that is less than candid.  *United States v. Ricker*, 983 F.3d 987, 994-95 (8th Cir. 2020); *see United States v. Blanche*, 149 F.3d 763, 769-70 (8th Cir. 1998).  The Minnesota court concluded that the same rationale justified sequestration of a witness during *voir dire*, because it is possible that a witness could tailor her testimony in response to what she hears from attorneys and prospective jurors during

-6-

jury selection. Zornes complains that the state court's rationale would have allowed the exclusion of 184 potential witnesses, but no other potential witness sought to attend *voir dire*, so the state court had no occasion to address whether the witness list should have been narrowed or the sequestration order relaxed as to others.

This court has not considered sequestration during jury selection on a direct appeal, and the parties have not identified any other appellate decision on point. While appellate decisions regarding jury *voir dire* often say that counsel should not use the process to discern a prospective juror's opinion of the evidence, it is apparent that attorneys sometimes do provide a preview of evidence during that phase of trial. *E.g.*, *Osgood v. State*, No. CR-13-1416, 2020 WL 2820637, at *13 (Ala. Crim. App. May 29, 2020); *State v. Nichols*, No. CA-CR 16-0070, 2017 WL 3431476, at *2 (Ariz. Ct. App. Aug. 10, 2017); *In re Commitment of Perez*, No. 09-12-00132-CV, 2013 WL 772842, at *7 (Tex. App. Jan. 29, 2013); *People v. Ochoa*, 28 P.3d 78, 93-94 (Cal. 2001). A discussion by counsel of what the evidence is likely to show raises the potential for tailoring of testimony by a prospective witness. As the Minnesota court observed, counsel's line of questioning during *voir dire* also may reveal trial strategy that could be accommodated later by a willing witness.

In the absence of any decision of the Supreme Court on the subject, we agree with the district court that fairminded jurists could take the view that the substantial reasons justifying witness sequestration during the evidentiary phase of a trial extend to jury *voir dire*. And just as our decisions have not required a trial court to fine-tune sequestration during the evidentiary phase according to the risk of tailoring posed by the testimony of each particular witness, we cannot say it was unreasonable for the state court to treat jury *voir dire* as an undifferentiated whole for purposes of sequestration of a key alibi witness. Therefore, the state court's denial of the claim based on sequestration of Zornes's girlfriend did not involve an unreasonable application of clearly established federal law.

-7-

The second "partial closure" was the trial court's direction that Stivers, the victim's brother, watch jury *voir dire* from an observation room. The court recognized that Stivers would not be a witness, so he was not subject to the sequestration order. Zornes argues that the state supreme court's decision to allow the exclusion of Stivers from the courtroom was an unreasonable application of *Waller* and *Presley*.

The Minnesota court concluded that excluding Stivers from *voir dire* was "too trivial" to implicate the Sixth Amendment. In reaching that conclusion, the court considered that the courtroom was never cleared of all spectators, the trial remained open to the general public and the press, there was no period of the trial in which members of the public were absent during the trial, and at no time was the defendant, his family, his friends, or any witness improperly excluded. *Zornes*, 831 N.W.2d at 620-21 (citing *State v. Lindsey*, 632 N.W.2d 652, 660-61 (Minn. 2001)).

Zornes contends that the state court's "triviality" rule is an unreasonable application of *Waller* and *Presley*. He maintains that a conclusion of triviality cannot be reconciled with *Waller*'s demand that the court must identify an overriding interest for closure and consider reasonable alternatives. *Waller*, 467 U.S. at 48.

The Minnesota court's decision to apply a "triviality" standard, however, is not the outlier that Zornes suggests. The Second Circuit in *Peterson v. Williams*, 85 F.3d 39 (2d Cir. 1996), ruled that an unjustified temporary closure in that case was "too trivial to amount to a violation" of the right to a public trial. *Id*. at 42. Judge Calabresi's opinion for the court explained that a triviality standard looks to "whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant . . . of the protections conferred by the Sixth Amendment." *Id*. Where "the values furthered by the public trial guarantee" were not jeopardized when the trial court briefly neglected to reopen the courtroom after an undercover officer finished testifying, the court held that the defendant's rights were not

-8-

infringed. *Id*. at 43-44. Several courts have adopted the *Peterson* approach, *e.g.*, *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007); *Braun v. Powell*, 227 F.3d 908, 918-20 (7th Cir. 2000), and have continued to apply it after *Presley*. *See United States v. Lewis*, No. 19-6148, 2022 WL 216571, at *7-8 (6th Cir. Jan. 25, 2022) (deputy marshal for twenty minutes excluded two spectators who were speaking loudly); *United States v. Anderson*, 881 F.3d 568, 573 (7th Cir. 2018) (trial continued after courthouse was locked for the night at 5:00 p.m.); *United States v. Patton*, 502 F. App'x 139, 141-42 (3d Cir. 2012) (members of defendants' families allegedly denied entry during jury selection because courtroom was filled to capacity); *United States v. Greene*, 431 F. App'x 191, 195-97 (3d Cir. 2011) (court security officer excluded defendant's brother from *voir dire* for want of seating space); *Kelly v. State*, 6 A.3d 396, 408-11 (Md. 2010) (exclusion of defendant's family for two to three hours during *voir dire* due to insufficient space in courtroom).

Whether or not the Supreme Court ultimately would endorse this line of authority tracing back to the Second Circuit's decision in *Peterson*, we believe that fairminded jurists could conclude that it is not inconsistent with *Waller* and *Presley*. Those cases involved total closures of the courtroom for entire phases of a criminal trial. But as *Peterson* discussed, even absolute words derive their meaning from context, 85 F.3d at 40, and the Supreme Court has not addressed whether a closure temporarily impacting but one potential spectator infringes on a defendant's right to a "public trial." Accepting, therefore, that a "triviality standard" is not an unreasonable application of clearly established federal law, we cannot say that the state court's employment of that standard created an unreasonable application here. The victim's relative, Stivers, was able to observe jury selection from an observation area, and Zornes does not explain how that remote viewing by one spectator undermined the values furthered by the constitutional guarantee of a public trial. *See id*. at 43.

-9-

Finally, even if the state supreme court's approval of the exclusion of Stivers during *voir dire* did amount to an unreasonable application of *Waller* and *Presley*, we would nonetheless affirm the dismissal of Zornes's petition on an alternative ground. A defendant may waive his right to a public trial by consenting to the closure of a proceeding. *Addai v. Schmalenberger*, 776 F.3d 528, 533-34 (8th Cir. 2015). Zornes not only consented to excluding the victim's brother from the courtroom during *voir dire*, but affirmatively requested that procedure so that prospective jurors would not have "eye contact with him." Under any standard of review, Zornes waived his present claim that the exclusion of Stivers from the courtroom during jury selection violated the right to a public trial.

\*     \*     \*

The judgment of the district court is affirmed.

_____