In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-2690

GRANT GAMBAIANI,

*Petitioner-Appellant,*

*v.*

BRITTANY GREENE, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-05142 — **Thomas M. Durkin**, *Judge.*

———————————

ARGUED APRIL 3, 2025 — DECIDED MAY 13, 2025

———————————

Before HAMILTON, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Grant Gambaiani was sentenced
to 34 years in prison after an Illinois jury found him guilty of
a host of crimes, including the repeated sexual assault of D.G.,
his minor cousin. Gambaiani appealed his conviction, argu-
ing the trial court violated his Sixth Amendment right to a
public trial when it partially closed the courtroom during
D.G.'s testimony. The Illinois Appellate Court disagreed,

affirmed his conviction, and the Supreme Court of Illinois denied review.

Gambaiani then sought postconviction relief in the Illinois state courts, averring his original trial attorneys failed to provide him with effective assistance during plea negotiations. He argued they did not properly apprise him of his sentencing exposure and, as a result, he rejected a plea offer he might otherwise have accepted. The state courts refused to grant Gambaiani relief.

He then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court, claiming violations of his constitutional rights to a public trial and to effective assistance of counsel. The court denied his petition. Gambaiani appeals, and we affirm.

## I. Background

### A. Factual Background

The underlying facts of this case are disturbing. Gambaiani—at the time 24 years old—repeatedly abused his 10-year-old cousin, D.G. He touched D.G.'s genitals and instructed D.G. to do the same to him, assuring his minor cousin this was all normal. Gambaiani anally penetrated and performed oral sex on D.G. And he described to his cousin various other sexually deviant activities he hoped to pursue with him. In addition to abusing D.G., Gambaiani also possessed pornographic videos depicting minors.

For his actions, the State of Illinois charged Gambaiani with four counts of predatory criminal sexual assault of a child, one count of aggravated criminal sexual abuse of a minor, and a final count of manufacturing child pornography. In July 2009, the state offered him a deal: He could plead guilty

to a single felony in exchange for a sentencing range of 4 to 15 years' imprisonment. After discussing the offer with his attorneys, Kevin Halverson and Elliot Samuels, Gambaiani rejected it. According to Gambaiani, this was because his attorneys led him to believe he would not have to serve any prison time.

In truth, each of his predatory criminal sexual assault charges alone carried a sentence of 6 to 60 years, and in the event of multiple convictions, Gambaiani faced mandatory consecutive sentences. His attorneys claimed to have informed Gambaiani of all this and advised him that the state's offer was a good one. They said it was his own belief that he could avoid incarceration that caused him to reject the offer. The state responded to Gambaiani's rejection of the plea deal with additional child pornography charges based on newly discovered evidence. The case then went to trial.

A jury returned a guilty verdict on all counts, and the trial court sentenced Gambaiani to 43 years' imprisonment. But the Illinois Appellate Court reversed his convictions, concluding the prosecution had unlawfully withheld potentially exculpatory evidence from the defendant.

Following that reversal, the state offered Gambaiani a new plea deal. This time, the state would recommend a 25-year prison term—far less than the first sentence handed down by the trial court. At that point, Gambaiani was unwilling to accept any more than 20 years' imprisonment. So, he rejected that offer too, and the case again headed for trial.

Gambaiani hired a new lawyer, Stephen Brundage, to retry his case. At a status conference before the second trial, the state requested that the courtroom be closed during D.G.'s

testimony. Illinois law provides that, during the prosecution of certain sex offenses, a court may impose a limited closure:

> [W]hen the alleged victim of the offense was a minor under 18 years of age at the time of the offense, the court may exclude from the proceedings while the victim is testifying, regardless of the alleged victim's age at the time of the victim's courtroom testimony, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media.

725 ILCS 5/115-11. Brundage did not object to the closure. Instead, he asked that Gambaiani's father be allowed to remain in the courtroom for the testimony as an interested party. The court agreed family members should be permitted to stay.

On the day of D.G.'s testimony, aside from Gambaiani's father, only two members of the public were in the courtroom: a student and a law clerk. The prosecutor volunteered to ask the pair to leave the room. After confirming no press was present, the trial court agreed and had the prosecutor instruct the court deputies not to allow anyone else in the room during D.G.'s testimony. But per the court's earlier ruling, Gambaiani's father remained in the courtroom. At no point did defense counsel object to the closure.

A jury found Gambaiani guilty on all counts, except for one charge of predatory criminal sexual assault. He then received a new sentence of 34 years' imprisonment.

### B. Postconviction Procedural History

Gambaiani appealed his conviction, arguing the trial court violated his Sixth Amendment right to a public trial by closing the courtroom during D.G.'s testimony. The Illinois Appellate

Court rejected his contention. It held that when Gambaiani's counsel failed to object to the closure in the trial court, he waived the argument. *People v. Gambaiani* (*Gambaiani I*), No. 2-14-0124, 2016 WL 3961411, at *5 (Ill. App. Ct. July 21, 2016). Even if he had not, the court saw no merit to the Sixth Amendment argument. The closure under 725 ILCS 5/115-11 was limited in scope, as it applied only during a minor victim's testimony and permitted certain people, like Gambaiani's father and members of the press, to remain in place. *Id.* at *6. Gambaiani sought review from the Supreme Court of Illinois, but it denied his petition for leave to appeal.

He then pursued state postconviction relief. Gambaiani claimed he was denied his right to effective assistance of counsel. He said that during plea negotiations, his original attorneys—again, Halverson and Samuels—failed to alert him of his full sentencing exposure and, as a result, he mistakenly rejected the state's original plea offer. The state trial court conducted an evidentiary hearing on this issue and denied Gambaiani relief. It credited his attorneys' testimony that they informed Gambaiani about his sentencing exposure but that he rejected the offer because he was determined to avoid prison time.

Relying in large part on the trial court's credibility determinations, the Illinois Appellate Court affirmed. *People v. Gambaiani* (*Gambaiani II*), No. 2-19-0372, 2020 WL 7625460, at *6 (Ill. App. Ct. Dec. 22, 2020). The court held that Gambaiani failed to make the requisite showings to sustain an ineffective assistance of counsel claim. *Id.* at *5–6. He appealed that decision to the Supreme Court of Illinois too, which again denied review.

Gambaiani finally turned to federal court. He petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254. Gambaiani renewed both his arguments that the state trial court denied him the right to a public trial and that his attorneys provided ineffective assistance of counsel. The district court refused to grant him relief on both fronts. He now appeals. We review the denial of a habeas petition de novo. *Powers v. Noble*, 132 F.4th 996, 1001 (7th Cir. 2025).

## II. Habeas Review

A state prisoner may petition for a writ of habeas corpus in federal court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But Congress, in enacting the Antiterrorism and Effective Death Penalty Act (AEDPA), greatly circumscribed the power of Article III courts to issue the writ. *Hicks v. Hepp*, 871 F.3d 513, 524 (7th Cir. 2017). When reviewing a petition for habeas relief under 28 U.S.C. § 2254(d), we afford substantial deference to state convictions. Doing so ensures those "convictions are given effect to the extent possible under law" and simultaneously prevents "federal habeas retrials." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (internal quotations omitted).

Section 2254(d) provides petitioners with two well-delineated avenues for obtaining habeas relief. First, the writ may issue when a state court's merits-based adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Within this first avenue, a decision is deemed "contrary to" clearly established federal law if the state court reached "a conclusion opposite to that" of the

Supreme Court on a legal matter, *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or if the state court arrived at an outcome in direct contradiction to a "materially indistinguishable" case decided by the Supreme Court. *Id.*

Also within this first avenue, a decision involves an "unreasonable application" of federal law when the state court invokes "the correct governing legal rule" from Supreme Court precedent but "unreasonably applies it to the facts of the" case. *Id.* at 407. Importantly, we will fault a state court only for failing to apply clearly established federal law. In other words, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Granting habeas relief via § 2254(d)(1) is rare. Indeed, we have explained that "[i]t is reserved for those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making about federal constitutional claims." *Dassey*, 877 F.3d at 302. In that same vein, the Supreme Court has repeatedly and forcefully cautioned courts against readily granting § 2254(d)(1) relief. *See, e.g.*, *Richter*, 562 U.S. at 102; *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam).

A second avenue for obtaining habeas relief appears in § 2254(d)(2). Under that provision, a federal court may issue the writ when a state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Here, too, federal courts are

cautious to grant relief, reviewing state-court factual findings with a healthy dose of deference. *Dassey*, 877 F.3d at 302–03. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The proper inquiry focuses instead on whether the alleged factual error is beyond debate. "[I]f a review of the record shows only that 'reasonable minds might disagree about the finding in question,'" the writ will not issue. *Dassey*, 877 F.3d at 303 (internal alterations omitted) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)).

As in the district court, Gambaiani claims he is entitled to habeas relief under § 2254(d)(1) and § 2254(d)(2). He submits that the state is holding him in custody in violation of his Sixth Amendment rights to a public trial and to effective assistance of counsel.

### III. Right to a Public Trial

The Sixth Amendment guarantees criminal defendants the right to a public trial. U.S. CONST. amend. VI. That right is enforceable against the states via the Fourteenth Amendment. *In re Oliver*, 333 U.S. 257, 273 (1948).

Following his second guilty verdict, Gambaiani argued on appeal that the state trial court denied him his public-trial right when it cleared members of the public from the courtroom during D.G.'s testimony. Recall, though, the Illinois Appellate Court concluded that Gambaiani's attorney acquiesced to the courtroom closure, thereby waiving the issue and precluding appellate review. *Gambaiani I*, 2016 WL 3961411, at *5. In the alternative, the court held that, because the trial

court only partially closed the courtroom, it did not deny
Gambaiani his Sixth Amendment right. *Id.* at \*6.

**A. Waiver**

Gambaiani challenges the Illinois Appellate Court's con-
clusion that he waived his public-trial right in several ways.
To him, the court's decision "was based on an unreasonable
determination of the facts." 28 U.S.C. § 2254(d)(2). And he ar-
gues the holding was both "contrary to, [and] involved an un-
reasonable application of, clearly established Federal law." *Id.*
§ 2254(d)(1).

In denying Gambaiani relief, the federal district court con-
cluded that—putting waiver aside—his right to a public trial
was never violated. We nonetheless find it appropriate to re-
view the Illinois Appellate Court's waiver holding, affording
that court's decision the proper amount of deference under
AEDPA, as we must.[1]

### 1. *Unreasonable Determination of the Facts*

According to Gambaiani, the Illinois Appellate Court un-
reasonably based its waiver decision on a factual error: that
his counsel "agreed" to closing the courtroom during D.G.'s

---

[1] In federal district court, it was the state's position that Gambaiani
procedurally defaulted his public-trial-right claim because the Illinois Ap-
pellate Court's waiver decision "rest[ed] on independent and adequate
state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991);
*see also id.* at 729–30 ("The [adequate and independent state grounds] doc-
trine applies to bar federal habeas when a state court declined to address
a prisoner's federal claims because the prisoner had failed to meet a state
procedural requirement."). On appeal, the state now concedes Gambaiani
did not procedurally default his claim, so we need not address the issue.

testimony. He disputes the court's determination, arguing his counsel in no way indicated agreement.

The Illinois Appellate Court's opinion did note that "defense counsel agreed to the closure." *Gambaiani I*, 2016 WL 3961411, at *5. But it was merely articulating the state's argument. In any event, Gambaiani attempts to identify an unreasonable determination of fact by isolating that phrase from its context. In the next sentence, the Illinois Appellate Court concluded that Gambaiani's counsel "acquiesc[ed] to the courtroom's closure" when, rather than objecting, he simply requested the defendant's father be allowed to remain. *Id.* Read fairly, the state court understood counsel to have "agreed" to the closure by accepting it without objection— that is, by acquiescing. And it was counsel's failure to object, in the Illinois Appellate Court's view, that amounted to a waiver of Gambaiani's Sixth Amendment argument. *See id.*

The record firmly supports the state court's view of the facts. Before Gambaiani's second trial, the prosecution raised the issue of clearing the courtroom during D.G.'s testimony. Again, Illinois law permits a trial court to exclude "all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115-11. Defense counsel did not oppose the closure. Instead, he sought a ruling from the court that Gambaiani's father was an interested party and could therefore stay in the courtroom while D.G. testified. The court agreed. On the day of D.G.'s testimony there were two members of the public in the courtroom, save Gambaiani's father—the law clerk and student. The court confirmed neither was with the press and, consistent with its earlier ruling, had the pair removed; Gambaiani's

father was permitted to stay. Once more, defense counsel failed to object.

As explained, habeas relief under § 2254(d)(2) is appropriate when a state court's factual determination proves unreasonable beyond debate. *Rice v. Collins*, 546 U.S. 333, 341–42 (stating that, even when "[r]easonable minds reviewing the record might disagree" about a factual determination, the writ will not issue). Beyond debate here, though, is that the Illinois Appellate Court correctly construed the record. Gambaiani's counsel acquiesced to the closure, meaning he "accept[ed]" it "passively." *Acquiesce*, BLACK'S LAW DICTIONARY (11th ed. 2019). Put simply, counsel did not object. Finding no error in the state court's factual determination, we therefore reject Gambaiani's contention that he is entitled to relief.

### 2. *Clearly Established Federal Law*

The parties primarily dispute whether the Illinois Appellate Court's conclusion that Gambaiani waived his right to a public trial by failing to object to the closure alone "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

We can decide with ease that the state court's holding was not contrary to clearly established federal law. The Supreme Court has not squarely addressed whether a defendant waives his right to a public trial when he fails to object to a courtroom closure. *See United States v. Moon*, 33 F.4th 1284, 1299 (11th Cir. 2022) (identifying a split in authority on this issue). So, the Illinois Appellate Court could not have arrived at a decision "opposite to that reached by" the Supreme Court. *Williams*, 529 U.S. at 405.

Whether the state court's waiver holding constituted an unreasonable application of clearly established federal law requires more treatment. Gambaiani posits that the right to a public trial is a fundamental right—one a defendant cannot waive based on a failure to object alone. Were this a direct appeal, his argument might have more traction. This court has held that, "like other fundamental trial rights, a right to a public trial may be relinquished only upon a showing that the defendant knowingly and voluntarily waived such a right." *Walton v. Briley*, 361 F.3d 431, 434 (7th Cir. 2004). Failure to object to the closure at trial, without more, will not do. *Id.*

But this is not a direct appeal. Under AEDPA's deferential standard of review, we must decide whether the state court's decision was "so erroneous that 'there is no possibility fairminded jurists could disagree that'" it runs afoul of Supreme Court precedent. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam) (quoting *Richter*, 562 U.S. at 102). The focus of this inquiry is necessarily on holdings from the Supreme Court. *Richter*, 562 U.S. at 100. We cannot rely on circuit precedent "to refine or sharpen a general principle" of law. *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam). Nor can we demand that a state court extend a rationale underpinning Supreme Court precedent and apply it to new circumstances. After all, if a rationale requires extension "before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *White*, 572 U.S. at 426 (internal quotations omitted) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

True, the Supreme Court has held that a heightened waiver standard applies to several criminal-trial rights. *See, e.g., Brady v. United States*, 397 U.S. 742, 748 (1970) (heightened

standard applies when waiving one's right to trial by entering a guilty plea); *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948) (heightened standard applies when waiving one's right to counsel); *Schneckloth v. Bustamonte*, 412 U.S. 218, 237–38 (1973) (collecting additional heightened waiver standards). Yet the Court has not required a heightened showing—something more than a failure to object—with respect to the public-trial right. *See Peretz v. United States*, 501 U.S. 923, 936 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960)) (noting, albeit in dicta, that the "failure to object to [the] closing of [a] court-room is waiver of [the] right to [a] public trial"). That proves fatal to Gambaiani's petition. To grant him habeas relief would be to mandate that the Illinois Appellate Court have extended a heightened waiver rationale from other Supreme Court decisions. That we cannot do.

Nor, as Gambaiani wishes, can we resort to our own circuit precedent to sharpen a general principle—for example, that "every reasonable presumption should be indulged against … waiver"—and apply it to a new context. *See Hodges v. Easton*, 106 U.S. 408, 412 (1882). Our decision to extend a heightened waiver standard to the public-trial right in *Walton* is thus of no help to Gambaiani under AEDPA's deferential review. 361 F.3d at 434; *see also Richter*, 562 U.S. at 102 (explaining that "even a strong case for relief does not mean the state court's" decision applied federal law unreasonably).

Fairminded jurists could disagree whether a failure to object to a courtroom closure constitutes a waiver of one's right to a public trial. *Richter*, 562 U.S. at 102. In fact, they disagree on this very question. Although failing to object does not result in a waiver in our court, the Fifth Circuit has held the opposite. *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006);

*see also Moon*, 33 F.4th at 1299 (recognizing a circuit split and collecting cases). As we have observed in the habeas context, "[a] division of authority in the lower courts provides some evidence that [a] matter has not yet been clearly established by the Supreme Court." *Winston v. Boatwright*, 649 F.3d 618, 633–34 (7th Cir. 2011).

All told, Supreme Court precedent leaves open the question whether failing to object to a courtroom closure amounts to a defendant waiving his right to a public trial. The Illinois Appellate Court thus did not unreasonably apply clearly established federal law when it held that Gambaiani waived his Sixth Amendment right by not objecting to the closure. For that reason alone, he is not entitled to habeas relief under § 2254(d)(1).

### B. Merits

Although the Illinois Appellate Court's waiver decision provides an independent basis for denying Gambaiani relief, we next address the state court's alternative holding on the merits of his Sixth Amendment argument.

The state court rejected Gambaiani's contention that the courtroom closure during D.G.'s testimony resulted in a violation of his constitutional right to a public trial. It acknowledged that, under relevant Supreme Court precedent, a total courtroom closure—one "which indiscriminately excludes the general public" from observing a trial—would run afoul of the Sixth Amendment. *Gambaiani I*, 2016 WL 3961411, at *6 (citing cases). But the Illinois Appellate Court distinguished cases forbidding total closures from the closure that occurred at Gambaiani's trial. The state trial court, relying on Illinois law, only partially closed the courtroom. Gambaiani's father

was present throughout D.G.'s testimony, and the court made sure no member of the media was asked to leave. To the Illinois Appellate Court, a partial closure—one that "applies only to the victim's testimony in sex-offense cases[] and does not exclude the media and those directly interested in the case"—raised "none of the evils of a closed trial." *Id.*

Here again, Gambaiani claims he is entitled to habeas relief under § 2254(d)'s first avenue. He argued in his briefs that the Illinois Appellate Court's reasoning was both "contrary to, [and] involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

At oral argument, though, Gambaiani conceded he cannot show the state court's decision contradicts any Supreme Court precedent.[2] He did so for good reason. Gambaiani has not identified a Supreme Court case with facts "materially indistinguishable" from his own. *Williams*, 529 U.S. at 405. And none exists. *See Zornes v. Bolin*, 37 F.4th 1411, 1415 (8th Cir. 2022) (observing "[t]he Supreme Court has never addressed" a case involving the "'partial closure' of … any phase of a trial[]"). His only route to relief, then, requires him to show the Illinois Appellate Court's reasoning amounted to an unreasonable application of clearly established federal law.

To make that showing, Gambaiani relies primarily on two Supreme Court decisions: *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam).

At issue in *Waller* was whether "a hearing on a motion to suppress evidence may be closed to the public over the objection of the defendant." 467 U.S. at 40–41. The Court held first

---

[2] Oral Arg. at 6:20–7:35, 7:55–8:08.

that the Sixth Amendment right to a public trial extends to suppression hearings. *Id.* at 43. It then articulated a standard for deciding when a total courtroom closure—one that excludes "all persons other than witnesses, court personnel, the parties, and the lawyers"—is appropriate. *Id.* at 48, 42. To justify a closure,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48.

Later, in *Presley*, the Court was tasked with resolving whether excluding the public from a jury voir dire—again, over a defendant's objection—amounted to a Sixth Amendment violation. 558 U.S. at 209–10. It concluded the right to a public trial extends to voir dire and held that a trial court must consider the *Waller* factors before closing a courtroom under those circumstances, too. *Id.* at 213–14.

Gambaiani faults the state trial court for clearing members of the public from the courtroom without first considering the factors set out in *Waller* and reaffirmed in *Presley*. And he claims the Illinois Appellate Court misapplied clearly established federal law when it sanctioned such a result.

No doubt a trial court must consider the *Waller* factors before fully closing a courtroom over a defendant's objection for even a portion of a criminal trial. *See, e.g., id.* But the Supreme Court has not held that a partial courtroom closure triggers

those factors. *See Zornes*, 37 F.4th at 1415. Both *Waller* and *Presley* dealt with total closures. Not so here. Gambaiani's father was present during D.G.'s testimony, and the trial court checked to make sure no member of the press was removed.

We cannot say the Illinois Appellate Court unreasonably applied clearly established federal law by not invoking the *Waller* factors. Holding otherwise would amount to demanding that the state court have extended the rationale underpinning *Waller* and *Presley* to a new context: a partial courtroom closure. A habeas court can make no such demand. *White*, 572 U.S. at 426. "AEDPA's carefully constructed framework 'would be undermined,'" after all, "if habeas courts introduced rules not clearly established under the guise of extensions of existing law." *Id.* (quoting *Yarborough*, 541 U.S. at 666).

If that were not enough, no Supreme Court decision has mandated that a trial court evaluate the *Waller* factors absent defense counsel raising an objection to the courtroom closure. 467 U.S. at 42 (counsel objected to closure during suppression hearing); *Presley*, 558 U.S. at 210 (counsel objected to closure during voir dire). We would thus break new ground if we held that a trial court had to raise the factors sua sponte. The Supreme Court has repeatedly cautioned that habeas review is not the proper time for a federal court to establish new federal rules. *See, e.g.*, *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

Because clearly established federal law did not mandate an evaluation of the *Waller* factors, we find no fault in how the Illinois Appellate Court resolved the merits of Gambaiani's Sixth Amendment claim. By way of recap, the court reasoned that a closure under 725 ILCS 5/115-11 comports with the Sixth Amendment because it is "limited in scope." *Gambaiani*

*I*, 2016 WL 3961411, at *6. The statute seeks to protect a minor victim testifying in a sex-offense case. *See id.* And it expressly contemplates allowing interested parties and the press to remain in the courtroom. *Id.*

Fairminded jurists could agree with the Illinois Appellate Court's reasoning. Indeed, federal "courts of appeals have concluded that partial closures may be justified by a 'substantial reason' without the 'overriding interest' that *Waller* requires to justify a complete closure." *Zornes*, 37 F.4th at 1416 (quoting *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013)); *see also Judd v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001) (same). The Supreme Court itself has recognized that "the protection of minor victims of sex crimes from further trauma and embarrassment" constitutes a "compelling" interest that might counsel in favor of a courtroom closure. *See Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 607 (1982). Far from unreasonable, then, the state court's decision finds a firm footing in federal law.

Two of Gambaiani's counterarguments merit discussion. First, citing *Globe Newspaper*, he resists the Illinois Appellate Court's description of the closure as a partial one.[3] In that case, the Supreme Court took issue—on First Amendment grounds—with a Massachusetts statute, which required

---

[3] *Globe Newspaper* is a First Amendment, rather than Sixth Amendment, case. But the First Amendment implicitly protects the right of "the press and general public" to "access … criminal trials." *Id.* at 603. The Supreme Court has recognized "that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46. So, as the district court correctly noted, both constitutional rights may inform our analysis.

courts to "exclude the general public from the court room, admitting only such persons as may have a direct interest in the case" while a minor victim of a sexual offense testified. *Globe Newspaper*, 457 U.S. at 598 n.1 (internal quotation and citation omitted). Gambaiani says *Globe Newspaper* stands for the proposition that a courtroom closure is total when only people who have an interest in the case are permitted to stay. So, for Gambaiani, the courtroom closure here was total because only his father, who had a direct interest in the case, remained for D.G.'s testimony.

Gambaiani overreads *Globe Newspaper*. The Court did not, as he contends, hold that a courtroom closure is total when the press and other members of the public are removed but an interested party is permitted to stay. Rather, the Court's express holding was that a "mandatory closure rule," like Massachusetts's, "violates the First Amendment." *Id.* at 602. No such rule is at issue in this case. Quite unlike the trial court in *Globe Newspaper*, which removed members of the media over their objections, the state trial court here sought to ensure anyone with the press could stay in the courtroom. *Gambaiani I*, 2016 WL 3961411, at *6. That remains true even though nobody from the media actually attended Gambaiani's trial.

Gambaiani's father was present during D.G.'s testimony, rendering the courtroom closure a partial one as a matter of fact. Neither the Court's decision in *Globe Newspaper* nor the apparent lack of media interest in Gambaiani's criminal trial alters that truth.

As for Gambaiani's second counterargument, he says the courtroom closure was effectively total because the state trial court instructed personnel not to let anyone in after the doors closed—which could have barred late-arriving media and

interested parties. This argument, like the last, ignores that the court allowed Gambaiani's father to remain in the room during D.G.'s testimony.

And even if the courtroom closure was handled in a less-than-ideal way, the Illinois Appellate Court still did not misapply clearly established federal law beyond debate. *See, e.g.*, *Brown v. Payton*, 544 U.S. 133, 141, 143 (2005). Reasonable minds could certainly agree that the trial court incorrectly instructed deputies to block all additional entrants. But doing so did not amount to a violation of Gambaiani's Sixth Amendment right to a public trial. *Gambaiani I*, 2016 WL 3961411, at *6. Indeed, this court has held that a limited closure of a courthouse to late arrivals before the conclusion of a defendant's trial did not amount to a violation of his public-trial right when the courtroom remained accessible to those already present. *See United States v. Anderson*, 881 F.3d 568, 576 (7th Cir. 2018); *see also Lacaze v. United States*, 391 F.2d 516, 519–21 (5th Cir. 1968) (no Sixth Amendment violation when courtroom door was temporarily locked but "[t]here may well have been spectators in the courtroom at the time"). Relief under § 2254(d)(1) therefore remains unavailable to Gambaiani. *See Richter*, 562 U.S. at 102.

\*        \*        \*

The state court's holding that Gambaiani waived his public-trial right was not contrary to, or an unreasonable application of, federal law. Nor was it based on an unreasonable determination of the facts. For those reasons alone, he is not entitled to habeas relief. Waiver aside, he remains ineligible for relief, as the Illinois Appellate Court's decision on the merits of the Sixth Amendment issue was likewise not an

unreasonable application of clearly established federal law under AEDPA's deferential standard.

### IV. Right to Effective Assistance of Counsel

We arrive last at Gambaiani's argument that he was denied his Sixth Amendment right to effective assistance of counsel—a right that extends to plea bargaining. *Missouri v. Frye*, 566 U.S. 134, 138, 140 (2012) ("The right to counsel is the right to effective assistance of counsel."). To establish a Sixth Amendment violation, the defendant must make two showings under *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. Then he "must show that the deficient performance prejudiced" him. *Id.*

Seeking postconviction relief in the state system, Gambaiani alleged that his original attorneys, Halverson and Samuels, performed deficiently because they did not explain the extent of his sentencing exposure—including that his predatory sexual assault counts would result in mandatory consecutive sentences under Illinois law. According to Gambaiani, Halverson and Samuels gave him the false hope that he could avoid prison time altogether. He accordingly rejected an otherwise favorable offer from the state to enter a guilty plea with a sentencing exposure of just 4 to 15 years. To Gambaiani, his attorneys' deficient performance prejudiced him, as he ultimately received a much higher sentence of 34 years' imprisonment.

After an evidentiary hearing on the matter, the state trial court denied Gambaiani's petition for postconviction relief. Halverson and Samuels both testified at the hearing, confirming they informed Gambaiani about the extent of his potential

sentence. But they explained he was bent on rejecting any deal that involved incarceration. The state trial court credited their testimony and discredited Gambaiani's testimony to the contrary. It found as a matter of fact that the attorneys informed Gambaiani about his sentencing exposure but that he nonetheless rejected the state's offer based on his unwillingness to serve prison time.

The Illinois Appellate Court affirmed. Relying in large part on the trial court's credibility determinations, it held that Gambaiani could not show his lawyers performed deficiently. *Gambaiani II*, 2020 WL 7625460, at *5. The state trial court's credibility determinations also influenced the Illinois Appellate Court's prejudice analysis. Halverson and Samuels offered testimony that Gambaiani "was *adamant* that he should receive probation and not a penitentiary sentence." *Id.* at *6. So, the court reasoned he "could not have been prejudiced by his attorneys' advice as his decision was *not* based on their advice." *Id.* It was instead based on his own false belief that he could avoid prison despite his criminal conduct. *Id.*

Here again, Gambaiani's petition for a writ of habeas corpus cites the § 2254(d)(2) avenue for obtaining relief. He submits that the Illinois Appellate Court's decision rejecting his ineffective assistance of counsel claim was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). We must disagree once more.

It bears repeating: A habeas court will not readily part ways with a state court's factual findings. *Dassey*, 877 F.3d at 302–03. We give great deference to credibility determinations in particular. *Sanders v. Radtke*, 48 F.4th 502, 511 (7th Cir. 2022) ("Such credibility determinations are notoriously difficult to overturn under § 2254(d)(2)." (internal quotation omitted)).

And although a petitioner "may disagree with the state court's weighing of certain facts, the highly deferential habeas review does not permit a federal court to conduct its own independent inquiry and reweigh factors as a de novo matter." *Id.* at 510–11 (internal quotation omitted).

Credibility determinations drove the Illinois Appellate Court's *Strickland* analysis here and, consequently, its decision to deny Gambaiani postconviction relief. We see no error in its findings that would justify issuing a habeas writ.

On *Strickland*'s performance prong, the record supports that Gambaiani's lawyers adequately informed him of his sentencing exposure. Halverson testified that, before the state ever made a plea offer, he talked with Gambaiani about possible sentences. And he testified it was his normal practice to go over whether multiple sentences had to be served consecutively. Samuels recounted listening to Halverson describe sentencing outcomes to Gambaiani on the day the state made its plea offer, including the fact that sexual assault sentences would run consecutively.

On *Strickland*'s prejudice prong, the record also shows that Gambaiani was unwilling to accept a deal that involved prison time, regardless of what his lawyers told him. Both of his attorneys indicated under oath that he was adamant about that. And his aversion to being incarcerated is all but confirmed by the fact that, even after initially receiving a 43-year sentence, Gambaiani rejected a separate 25-year plea deal leading up to his second trial.

The Illinois courts credited all this testimony, and nothing in the record counsels overturning those rulings here. *See id.* at 511.

Gambaiani pushes back, dedicating pages of his briefs to the "avalanche of evidence showing that his attorneys' testimony at the postconviction hearing was incredible." The district court did an admirable job rejecting many of the factual inconsistencies that Gambaiani purports to have identified. Yet that work need not be repeated here because a habeas court's task is not to review the record de novo. *Id*. at 510–11. Instead, AEDPA's deferential standard requires that federal courts give significant leeway to state courts on factual issues like this one. Removed as we are from the original postconviction proceedings, we cannot conclude that the Illinois courts erred in crediting the testimony of attorneys Halverson and Samuels.

The district court was right to reject Gambaiani's petition for a writ of habeas corpus on this front, too.

## V. Conclusion

Gambaiani raises a variety of arguments for why he is entitled to a writ of habeas corpus. But he has no route to relief given AEDPA's deferential standard of review. We therefore AFFIRM the district court's decision to deny the petition in full.